## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**MANDY DEMPSEY**,

    *Plaintiff,*

    v.

**NATIONAL CREDIT ADJUSTERS, LLC, LEE TYLER REMPEL,** and **ELEVATE CREDIT, INC.**,

    *Defendants.*

Case No: 3:22-CV-00096

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Mandy Dempsey** ("**Ms. Dempsey**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **National Credit Adjusters, LLC ("NCA"), Lee Tyler Rempel** ("**Rempel**"), and **Elevate Credit, Inc.** *doing business as* **Rise Credit** ("**Rise**") (jointly "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Ms. Dempsey against the Defendants for violations of the *Racketeer Influenced and Corrupt Organizations Act,* 18 U.S.C. §1961, *et. seq.* ("**RICO**"), and the *Florida Consumer Collection Practices Act*, Florida Statutes § 559.55, *et. seq.* ("**FCCPA**"), and against NCA and Rempel *only*

for violations of the **Fair Debt Collection Practices Act**, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's RICO and FDCPA claims arises under 28 U.S.C. § 1331, as RICO and the FDCPA are federal statutes.

3.      This Court has supplemental jurisdiction for Plaintiff's State law FCCPA claims under 28 U.S.C. § 1367.

4.      The Defendants are subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and / or caused by the Defendants within the Middle District of Florida

## PARTIES

### Ms. Dempsey

6.      **Ms. Dempsey** is a natural person who at all times relevant resided in Hamilton County, Florida.

7.      Ms. Dempsey is a *Consumer* as defined by the FDCPA, 15 U.S.C. §1692a(3), the FCCPA, §559.55(8), Fla. Stat., and the FCRA, 15 U.S.C. §1681a(c).

## NCA

8.      NCA is a Kansas limited liability company with a principal business address of **327 W 4th Street, Hutchinson, KS 67501.**

9.      NCA is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

10.     NCA is licensed to collect consumer debts in the State of Florida, holding *Consumer Collection Agency* ("**CCA**") license number CCA0090486.

## Rempel

11.     Rempel is the CEO and manager of NCA.

12.     In his capacity as manager, Rempel is the individual responsible for the determination of, and implementation of, NCA's policies and procedures.

13.     Rempel also participates directly in the day-to-day operations of NCA, including the collection of consumer debts and the purchase of consumer debts.

14.     Upon information and belief, Rempel resides at **23 Prairie Dunes Dr., Hutchinson, KS 67502.**

15.     Rempel and NCA are debt collectors within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, § 559.55(7), Fla. Stat.,  in that the Defendants use an instrumentality of commerce, including the U.S. mail and / or

telephone, interstate and within the state of Florida, for their business, the principal purpose of which is the collection of debts, and / or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## Elevate

16.     Elevate is a Delaware corporation with a principal business address of **4150 International Plaza, Suite 300, Fort Worth, TX 76109.**

17.     Elevate's Delaware registered agent is **Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808.**

## FACTUAL ALLEGATIONS

### Rise's Illegal Loan to Ms. Dempsey

18.     On or about August 10, 2019, Rise issued an installment loan (the "**Rise Loan**" or "**Debt**") to Ms. Dempsey.

19.     The Loan had a stated principal amount of $3,000.

20.     The Rise Loan was, purportedly, funded through **FinWise,** a small, single-branch bank in Murray, Utah (the "**Debt**").[1]

21.     Rise wired the Loan to Ms. Dempsey's bank account which she maintains in Jasper, Florida, and payments were debited from that account.

---

[1] The bank has a small office in Sandy, UT and Garden City, NY, but has no retail branches at these locations.

22.     Ms. Dempsey used the Loan for personal, family, and household purposes, and as such, the Loan, and any balance arising therefrom, meets the definitions of *Debt* under the FCCPA, Florida Statutes § 559.55(6), and the FDCPA, 15 U.S.C. § 1692a(5).

23.     The Loan carried an annual interest rate of **149%**.

24.     Section 687.071(3), Fla. Stat. renders loans made with annual interest rates greater than 45% a third-degree felony.

25.     Section 687.071(7), Fla. Stat. renders any loan in violation of § 687.701, and any debt stemming from such extension of credit, void and unenforceable.

26.     Ms. Dempsey' Rise Loan was thus *void ab initio*.

27.     The Rise Loan is therefore an *unlawful debt* under 18 U.S.C. § 1961(6).

28.     Florida law prohibits any recovery of the principal on such loans.

### Rise Engages in Rent-a-Bank Scheme with FinWise

29.     Rise is a Fort Worth, Texas-based *FinTech* company, lending to consumers at interest rates illegal in the vast majority of states, including Florida.

30.     One of the founders of Rise was Ken Rees ("**Rees**") who was its CEO until his resignation in July 2019.

31.     Rees was previously the CEO of Think Finance, LLC ("**Think Finance**"), which made similar illegal consumer loans at triple-digit interest rates.

32.     Initially, Think Finance "partnered" with the First Bank of Delaware to launder its loans to create the appearance that they were issued by a state-chartered bank, to avoid state usury laws.

33.     In 2012, the First Bank of Delaware was stripped of its bank charter and fined $15 million.

34.     Rees thereafter partnered with the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation in Box Elder, Montana and began laundering its loans – now re-branded "Plain Green Loans" – through the Tribe, claiming the Tribe's sovereign immunity prevented civil and criminal action from being taken against it.  Such arrangement is often referred to as a "rent-a-tribe" scheme.

35.     Plain Green's loans charged interest rates of up to 400% annually.

36.     After lawsuits filed against Think Finance by the Consumer Financial Protection Bureau, the Pennsylvania Attorney General, and others, relating to the wildly-usurious interest rates being charged by Plain Green, Rees formed Elevate Credit, Inc.

**Rise's Business Model**

37.     In an effort to avoid state usury laws, Rise "partnered" with FinWise.

38.     Pursuant to 12 U.S.C. § 85, FinWise is not subject to foreign state interest rate limits, as Utah has no maximum legal interest rate in its state law, and,

indeed, if FinWise were the actual lender in this matter, FinWise could charge any reasonable interest rate on its loans.

39.     However, FinWise was not the true lender of Ms. Dempsey's purported loan as Rise only launders its loans through FinWise.

40.     Indeed, FinWise had virtually nothing to do with the marketing, underwriting, servicing, collection, and post-charge-off sale to Defendant NCA.

41.     Of particular importance, none of FinWise's capital was ever at risk under Rise's loan.

42.     In exchange for the use of its name, FinWise is paid a small portion of the loan for its role in Rise's lending.

43.     At all times relevant, Elevate EF SPV ("**EF SPV**"), a Cayman Islands special purpose vehicle which operates for the financial benefit of Elevate Credit, had purchased a 96% interest in the receivables for the loans, including principal and interest due.

44.     This 96% ownership interest shows that EF SPV is the legal and equitable owner of the receivables for the loans.

45.     Elevate Credit is the primary beneficiary of EF SPV, and receives the income generated from this 96% ownership interest.

46.     Elevate Credit substantially controls and manages EF SPV and absorbs any losses, insulating EF SPV and FinWise.

47.    Elevate Credit is the entity whose capital is at risk if a particular consumer loan goes bad.

48.    FinWise contributes, at most, a token 4% of the capital of any consumer loan.

49.    Thus, on information and belief, FinWise contributed $120 or less to fund Ms. Dempsey's loan, while Elevate Credit contributed $2,880 or more.

50.    Elevate Credit protects EF SPV from Rise loan losses, placing the risk of loss on Elevate Credit.

51.    Similarly, FinWise's economic interests are protected due to its agreement with Elevate Credit, which includes a stipulation that EF SPV maintain cash collateral in a FinWise account to secure its obligations to purchase the Rise loans allegedly made "by" FinWise.

52.    Elevate Credit, through ones of its subsidiaries, acts as the servicer for the Rise loans, not FinWise.

53.    Similarly, Elevate Credit reconciles the accounts, posts payments and other credits to the accounts, and provides periodic billing statements to consumers.

54.    Elevate Credit, not FinWise, has the predominant economic interest in loans made to consumers like Ms. Dempsey, and is thus the true lender of the loans.

55.     As per Rise's business model, once FinWise made the Loan to Ms. Dempsey, it was immediately assigned to Rise.

56.     Rise, not FinWise, then proceeded to attempt to collect the loan – including the usurious interest – from Ms. Dempsey.

57.      However, Rise, a non-bank assignee of the Rise Loan, had no legal ability to collect the assessed interest.

58.     Rise has been sued in the past for collection of unlawful debt and its use of FinWise in its "rent-a-bank" schemes.

59.     Rise thus knew, or should have known, that it had no legal authority to collect the Loan from Ms. Dempsey.

## Rise Reports Debt to CRAs

60.     In an effort to ensure collection and encourage prompt payment, Rise reported Ms. Dempsey's Loan to the major *Consumer Credit Reporting Agencies* ("**CRAs**"), including Experian, monthly, beginning August 2019. **SEE PLAINTIFF'S EXHIBIT A.**

61.     By May 2020, Rise had reported the account as an account charged to profit and loss, a highly negative designation which has a severe impact on a consumer's credit score.

62.     Upon information and belief, Rise made multiple attempts to collect the Debt from Ms. Dempsey in the last 24 months, including e-mail and postal correspondence.

63.     Each one of these attempts sought to collect an unlawful Debt from Ms. Dempsey, *i.e.*, the balance of a loan made at over 149% annual interest, and accrued interest and fees on the loan.

## NCA Attempts to Collect Usurious Rise Loan from Ms. Dempsey

64.     Around December 2020, Rise sold the loan to NCA.

65.     NCA, in compliance with 15 U.S.C. § 1692g, mailed Ms. Dempsey a collection letter, seeking to collect the Rise Loan.

66.     In a similar effort to encourage prompt payment, NCA also reported the purported debt to the major CRAs, including Experian, monthly, beginning with February 2021.  **SEE PLAINTIFF'S EXHIBIT B.**

67.     NCA's reports of the Rise Loan were *communications* as defined by the FDCPA and were made in connection with the Rise Loan.

68.     NCA certified to the CRAs that the debt was *in collection*, with $3,567 past due, thereby indicating that the Rise Loan was legitimate and lawful.

69.     NCA knew, or should have known, that it was collecting an illegal debt.

70.     On information and belief, NCA is a large debt buyer with a number of experienced lawyers advising it regarding consumer protection statutes.

71.     Further, NCA has been subject to multiple actions by state regulatory authorities over its attempts to collect illegally-issued consumer loans.

72.     For example, NCA was sued in July 2012 by the Arkansas State Attorney General for collecting payday loans issued to Arkansas consumers in violation of Arkansas law. As part of its settlement with the Attorney General, NCA cancelled collection on $2.7 million in loans, and paid $200,000 to the State.

73.     Over 100 other lawsuits have been filed against NCA for its collection of consumer loans made under illegal terms.

74.     NCA purchases a large volume of unlawful debt from lenders including Rise, at a tiny fraction of face value, and then attempts to collect the full-face value those debts from consumers like Ms. Dempsey.

75.     On information and belief, NCA was in possession of the original loan agreement documents creating the Debt at the time it attempted to collect the Debt, and in any event it should have had such prior to seeking to collect the Debt.

76.     On information and belief, the usurious interest rate was printed in large, bold type on a Truth in Lending Act ("**TILA**") disclosure on the loan documents.

77.     Ms. Dempsey suffered severe emotional distress as a result of being subjected to illegal collection actions by NCA concerning a loan which she does not legally owe under Florida law.

78.     Ms. Dempsey's credit reports and scores have been severely and adversely negatively impacted from NCA's false reporting that she owes a debt in excess of $3,500.

79.     At all times relevant, Rempel, as CEO of NCA, instructed his agents and employees to attempt to collect the Rise Loan from Ms. Dempsey.

80.     At all times relevant, Rempel, as CEO of NCA, authorized the purchase of bulk portfolios of debt from lenders including Rise, despite knowing the loans had been made at usurious interest rates through dubious "rent-a-bank" schemes.

81.     Ms. Dempsey has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e
## (NCA & Rempel)

82.    Ms. Dempsey hereby incorporates paragraphs 1 – 81 as if fully stated herein.

83.    Despite claims to the contrary, the Rise Loan was issued by an unlicensed, non-bank entity, Rise, and charged an interest rate in excess of Florida's maximum statutory rate and is thus unenforceable against Ms. Dempsey.

84.    NCA and Rempel violated **15 U.S.C. § 1692e** when NCA used false and deceptive representations in connection with the collection of a debt, by indicating to Ms. Dempsey that she owed an amount that she did not owe, and deceptively reporting the Loan as legal, valid, and enforceable, when it was not.

85.    The above stated violations were committed pursuant to policies put in place by Rempel and subject to his day-to-day oversight.

86.    Rempel is therefore jointly and severally liable with NCA. *See Fed. Trade Comm'n v. Moses*, 913 F.3d 297 (2d Cir. 2019).

87.    Accordingly, NCA and Rempel are jointly and severally liable to Ms. Dempsey for her actual damages, statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT II
## VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e2(a)
## (NCA & Rempel)

88.     Ms. Dempsey hereby incorporates paragraphs 1 – 81 as if fully stated herein.

89.     Despite claims to the contrary, the Rise Loan was issued by an unlicensed, non-bank entity, Rise, and charged an interest rate in excess of Florida's maximum statutory rate and is thus unenforceable against Ms. Dempsey.

90.     NCA and Rempel violated **15 U.S.C. § 1692e2(a)** when NCA used false and deceptive representations, regarding the legal status and amount of the Debt, in connection with the collection of the Debt, by indicating to Ms. Dempsey that she owed an amount which she did and deceptively identifying the Loan as legal, valid, and enforceable, when it was not.

91.     The above stated violations were committed pursuant to policies put in place by Rempel and subject to his day-to-day oversight.

92.     Rempel is therefore jointly and severally liable with NCA. *See Fed. Trade Comm'n v. Moses*, 913 F.3d 297 (2d Cir. 2019).

93.     Accordingly, NCA and Rempel are jointly and severally liable to Ms. Dempsey for her actual damages, statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT III
## VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e(10)
## (NCA & Rempel)

94.    Ms. Dempsey hereby incorporates paragraphs 1 – 81 as if fully stated herein.

95.    The Rise Loan was issued by an unlicensed, non-bank entity, Rise, and charged an interest rate in excess of Florida's maximum statutory rate and is thus unenforceable against Ms. Dempsey.

96.    NCA and Rempel violated **15 U.S.C. § 1692e(10)** when NCA used false and deceptive representations in connection with the collection of a debt, by indicating to Ms. Dempsey that she owed an amount that she did not owe, and identifying the Loan as legal, valid, and enforceable, when it was not.

97.    The above stated violations were committed pursuant to policies put in place by Rempel and subject to his day-to-day oversight.

98.    Rempel is therefore jointly and severally liable with NCA. *See Fed. Trade Comm'n v. Moses*, 913 F.3d 297 (2d Cir. 2019).

99.    Accordingly, NCA and Rempel are jointly and severally liable to Ms. Dempsey for her actual damages, statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

<u>COUNT IV</u>
**VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692f(1)**
**(NCA & Rempel)**

100.    Ms. Dempsey hereby incorporates paragraphs 1 – 81 as if fully stated herein.

101.    The Rise Loan was issued by an unlicensed, non-bank entity, Rise, and charged an interest rate in excess of Florida's maximum statutory rate and is thus unenforceable against Ms. Dempsey.

102.    NCA and Rempel violated **15 U.S.C. § 1692f(1)** by attempting to collect an amount which was not permitted by law, to wit, the Rise Loan.

103.    The above stated violations were committed pursuant to policies put in place by Rempel and subject to his day-to-day oversight.

104.    Rempel is therefore jointly and severally liable with NCA. *See Fed. Trade Comm'n v. Moses*, 913 F.3d 297 (2d Cir. 2019).

105.    Accordingly, NCA and Rempel are jointly and severally liable to Ms. Dempsey for her actual damages, statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT V
## VIOLATIONS OF THE FCCPA, § 559.72(9) FLA. STAT.
### (All Defendants)

106.     Ms. Dempsey hereby incorporates paragraphs 1 – 81 as if fully stated herein.

107.     The Rise Loan was issued by an unlicensed, non-bank entity, Rise, and charged an interest rate in excess of Florida's maximum statutory rate and is thus unenforceable against Ms. Dempsey.

108.     The Defendants violated **§ 559.72(9) Fla. Stat.** by attempting to enforce the Rise Loan against Ms. Dempsey and by asserting the legal right to do so, when they collected, and attempted collection of the loan via ACH withdrawals, emails, and calls to Ms. Dempsey.

109.     The Defendants' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt and profiting from it.

110.     The Defendants each knew of the illegal nature of the Loan, as NCA and Rempel have each had multiple prior lawsuits filed against them for substantially similar collection attempts and Rise has gone to great lengths to attempt to avoid Florida law through the use of a Rent-A-Bank scheme.

111.     Accordingly, the Defendants are jointly and severally liable to Plaintiff for their actual damages, statutory damages of up to $1000.00 *per*

*defendant*, punitive damages, costs, and attorney's fees pursuant to § 559.77 Fla. Stat..

**COUNT VI**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(a)**
**(Rise only)**

112.    Ms. Dempsey hereby incorporates paragraphs 1 – 81 as if fully stated herein.

113.    Rise and FinWise, through their joint operation and control of Rise Credit, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4), as they had an ongoing structure dividing responsibilities between them, for the purpose of creating a fascade behind which Rise could issue usurious loans under the guise of legality and which was established in a manner providing hierarchical decision making to Rise which directed operations.

114.    The loan issued by Rise Credit to Plaintiff charged an interest rate far in excess of the legal rate under Florida law and, thus, the Loan constitutes an *unlawful debt* under RICO, 18 U.S.C. § 1961(6).

115.    Rise utilized the internet, telephone and mail to reach across state lines in the operation of Rise Credit, including sending information through collection calls, credit reporting, and ACH withdrawals and deposits to and from Plaintiff's bank account.

116.   Rise received income derived directly and indirectly from the collection of Plaintiff's Rise Loan.

117.   Rise utilized a portion of the income derived from the collection of Plaintiff's unlawful loan to invest in the operation of the enterprise which affected borrowers in interstate commerce.

118.   Accordingly, Rise is liable to Plaintiff for treble her actual damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT VII**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(b)**
**(Rise only)**

119.   Ms. Dempsey hereby incorporates paragraphs 1 – 81 and 113 as if fully stated herein.

120.   The loan issued by Rise Credit to Plaintiff charged an interest rate far in excess of twice the enforceable rate under Florida law and, thus, the Loan constitutes an *unlawful debt* under RICO, 18 U.S.C. § 1961(6).

121.   Rise utilized the internet, telephone and mail to reach across state lines in the operation of Rise Credit, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from Plaintiff's bank account.

122.   Rise received income derived directly and indirectly from the collection of Plaintiff's loan.

123.    Rise utilized a portion of the income derived from the collection of Plaintiff's unlawful loan to maintain its interest and control of the operations of the enterprise.

124.    Accordingly, Rise is liable to Plaintiff for her actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

<u>COUNT VIII</u>
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)**
**(All Defendants)**

125.    Ms. Dempsey hereby incorporates paragraphs 1 – 81 and 113 as if fully stated herein.

126.    Likewise, Rise, together with NCA and Rempel, through their efforts to collect the Rise Loan on behalf of Rise, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

127.    The Rise Loan issued by Rise Credit to Plaintiff charged an interest rate far in excess of twice the enforceable rate under Florida law and, thus, the Rise Loan constitutes an *unlawful debt* under RICO, 18 U.S.C. § 1961(6).

128.    The Defendants utilized the internet, telephone and mail to reach across state lines in the operation of Rise Credit, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from Plaintiff's bank account.

129.   The Defendants each associated with the enterprise and participated in the affairs of the enterprise through the collection of an unlawful debt – the Rise Loan.

130.   The Defendants' participation in the enterprise affected interstate lending / commerce, and violated § 1962(c) of RICO by causing Plaintiff to repay an unlawful loan.

131.   Accordingly, the Defendants are jointly and severally liable to Plaintiff for her actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## COUNT IX
## VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)
### (All Defendants)

132.   Ms. Dempsey hereby incorporates paragraphs 1 – 81 as if fully stated herein.

133.   The Rise Loan issued by Rise Credit to Plaintiff charged an interest rate far in excess of twice the enforceable rate under Florida law and, thus, the Rise Loan constitutes an *unlawful debt* under RICO, 18 U.S.C. § 1961(6).

134.   The Defendants utilized the internet, telephone and mail to reach across state lines in the operation of Rise Credit, including making collection calls, credit reporting, and ACH withdrawals and deposits to and from Plaintiff's bank account.

135.   The Defendants violated **§ 1962(d) of RICO** by conspiring with each other, and other persons, to issue and collect Plaintiff's unlawful Rise Loan and other similar illegal loans in the form of a joint enterprise between them.

136.   The Defendants each acted in furtherance of this conspiracy, (a) issuing a usurious and thus illegal loan to Plaintiff; (b) initiating ACH deposits and withdrawals to Plaintiff's bank account; and, (c) attempting to collect the Rise Loan through credit reporting, calls, and emails to Plaintiff.

137.   Accordingly, the Defendants are jointly and severally liable to Plaintiff for treble actual damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

## NCA and Rempel

WHEREFORE, Plaintiff requests that the Court enter judgment against NCA and Rempel, jointly and severally, for:

A.   Treble Actual damages of **$7,416**, plus attorney fees and court costs, pursuant to 18 U.S.C. §1964(c);

B.   Actual damages of **$2,472** plus statutory damages of **$1,000** and attorney fees and costs pursuant to **Florida Statutes § 559.77(2);**

C.   Actual damages of **$2,472** plus statutory damages of **$1,000** pursuant to **15 U.S.C. § 1692k(a)(2)(A);**

D.  An award of pre-judgment and post-judgment interest as provided by law;

E.  An award of attorneys' fees, litigation expenses, and costs of suit as provided under the foregoing statutes; and,

F.  Such other relief as the Court deems just and proper.

## <u>Rise</u>

**WHEREFORE**, Plaintiff requests that the Court enter judgment against Rise for:

A.  Treble Actual damages of **$7,416**, plus attorney fees and court costs, pursuant to 18 U.S.C. §1964(c);

B.  Actual damages of **$2,472** plus statutory damages of **$1,000** and attorney fees and costs pursuant to **Florida Statutes § 559.77(2);**

C.  An award of pre-judgment and post-judgment interest as provided by law;

D.  An award of attorneys' fees, litigation expenses, and costs of suit;

E.  Such other relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Ms. Dempsey hereby demands a trial by jury on all issues so triable.

Respectfully submitted on January 26, 2022, by:

**SERAPH LEGAL, P. A.**

*/s/ Phil R. Goldberg*
Phil R. Goldberg, Esq.
Florida Bar No.: 105940
PGoldberg@SeraphLegal.Com

/s/ Thomas M. Bonan
Thomas M. Bonan, Esq.
Florida Bar No.:118103
TBonan@SeraphLegal.Com

Seraph Legal, P.A.
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230 (Ext: 304)
Fax: 855-500-0705
*Counsel for Plaintiff*

## <u>ATTACHED EXHIBIT LIST</u>

A     Experian Report, January 18, 2022, Rise Loan Tradeline - Excerpt
B     Experian Report, January 18, 2022, NCA Tradeline - Excerpt